22-7021 United States v. Murphy We look forward to hearing the arguments on it. Council Propellant, if you would make your appearance and proceed. Since we're alone here, I'll be somewhat flexible in the time. Go ahead, proceed. Thank you, Your Honor. May it please the Court. Contrary to the government's argument, there was no forfeiture of Mr. Murphy's sufficiency of the evidence claimed. With respect to Counts 2 and 3, they were anchored in an allegation of kidnapping. And based on the logic and reasoning of the Gabaldon case decided by this Court, the Berry case out of the Virgin Islands and the Howard case out of the Ninth Circuit, in fact, a succinct and direct argument embodying the logic of the Gabaldon case was made during our Rule 29 motion at the conclusion of the government's case in the Chief. And I just want to quote what we said. And we would also submit that what happened to Mr. Jacobs did not amount to or constitute kidnapping. He's pulled out of the car, beaten, and killed. I don't think that meets the elements of kidnapping. And then we go on to say, but more important than that, they haven't shown Mr. Murphy participated in any kidnapping. And then with respect to Count 3, we reiterated or incorporated that argument and said, third element, the kidnapping of George Jacobs resulted in the death of George Jacobs. There was no kidnapping, number one. And then again, we went on to say, and second and more particularly, there was no kidnapping by Mr. Murphy. Those arguments were pages 288 to 290 of the trial transcript. So when the government says that under United States v. Maynard, this argument was forfeited or away, they are simply incorrect. In Maynard, the defense counsel made a single argument under Rule 29, then raised a completely different argument on the appeal. And this court held that under those circumstances, the argument was forfeited. Let me just play it out a little bit, Mr. Audrey. There are a couple of ways I can read the transcript in this matter. One is that essentially what was presented was a generalized objection in the sense of the elements of kidnapping are not satisfied. And in fact, I noted in the transcript, you used the word elements of kidnapping were not satisfied. And if that statement is made, do you agree or not that that allows for you to then amplify that in your appellate document, your appellate brief on appeal as to why the elements are not satisfied? Yes, Your Honor, I believe it does. I think that would cover it. But even more particularly, we made the specific argument that Mr. Jacobs was not kidnapping and that what happened to him did not amount to or constitute kidnapping when we say he's pulled out of the car, beaten, and killed. And of course, this was a short three-day trial. The judge is well aware in context of what we're talking about because the facts show that there was simply no kidnapping in this case. Yes, but I think the government's position would be that the argument regarding Barry and the argument as it relates to the notion that there needs to be a difference between the acts that relate to the underlying crime and kidnapping, that those things were not amplified in the context of your transcript. Your transcript referred to pulling him out, beating him up, and saying that's not kidnapping. Well, you didn't cite Barry. You didn't talk about this other stuff. So the question would be, were you required to do that? I don't think so, Your Honor, because it's clear from the argument what we're getting at and what we're talking about. The fact that Mr. Jacobs is pulled out of the car, he's beaten right there, he's cut right there, he's killed right there, does not amount to kidnapping. But you can make that argument and not have it be a Barry argument, right? In other words, the district court may have heard every word that you've read to us and processed that and never thought, I need to look at Barry and those factors. Well, Your Honor, certainly we did not cite the Barry case or the Gabaldon case during that argument. But I don't think we're required to cite a specific case so long as the argument encompasses the logic of those cases. So I don't think that the Banger to cite a specific case during the Rule 29 argument is fatal because we put it right out there. And, of course, the judge has heard all the testimony. You heard the testimony of Mr. Sanka that shows how this thing went down. And the government's own exhibit that they supplemented the record with and took a picture of and include in their appellate brief indicates exactly what we're saying. Mr. Jacobs is pulled out of the car. He's beaten by Mr. King and Mr. Long. He's cut in several places on his body. He's emasculated right there next to the car. And, Your Honor, if this were to constitute kidnapping, then the kidnapping statute, based on the territorial and or maritime jurisdiction of the United States, such as was charged in this case, is expanded beyond anything reasonable at all. They talk about seizure and confinement. Now, if I'm in a bar fight and I pull some guy toward me and grab him by the shirt or grab him by the tie or whatever, and I move him around and I start punching him or something like that, he's seized and confined. Does that mean he's kidnapped? I would suggest that the answer to that clearly has to be no. Does it mean that he's held? It means that he's held, but he's not kidnapped. You concede that he's held in that instance? Yes, he's held, certainly, but just to hold and confine somebody. Well, you're treating those as though they're the same thing, hold and confine. Is hold something extra under the statute, temporally? I don't think so, Your Honor. Oh, let's be clear here. In your own brief, you cite Toledo for the proposition that detained is a separate part of the crime. I mean that there is a separate, distinct element of holding. And so I need to be clear on what your position is here. I mean the statute would seem to imply that you can seize and you have to hold. Is that not right? No, I think that's correct, Your Honor, but just doing that when that is incidental to and simply part of a homicide, something that you have to do to accomplish the homicide, doesn't mean somebody is kidnapped or that you have a separate offense there for kidnapping. Well, when they blocked his car, was he seized? I don't think he was seized for that purpose, Your Honor. Certainly, the car was stopped. Mr. Mervin was driving his truck, longing to get out of the truck. Before Mr. Jacobs got out of the car, beat him, he was cut. Well, when he was pulled out of the car, was he seized? He's seized, Your Honor, but that seizure is incidental to and inherent to and a part of the homicide. He couldn't have been killed in the manner in which he was killed unless he's seized and or confined by being held down and not allowed to go. So when you look at this Gabaldon case, and I know what the government is going to say. They're going to say that this court in that particular case did not explicitly adopt the Berry test. However, the court did say that the Berry test was persuasive. I don't recall the exact language, but it was persuasive with respect to a kidnapping case like this that's charged primarily under 18 U.S.C. section 1201A2, and the court in Gabaldon applied the Berry test in rejecting the defendant's sufficiency of the evidence argument. Because in that case, unlike this case, the female victim voluntarily got— Well, we know the facts of the case. Yes, sir. Is the—do you agree that our circuit has not adopted the Berry test? I agree that this circuit has not explicitly adopted it. However, it certainly didn't repudiate it. Okay, understood. And not to interrupt your argument, but I want to make sure I get an answer to this question, which is the second-degree murder conviction stands, right? Is there anything that would upset that conviction? No, Your Honor, because that was a lesser-included offense of a premeditated murder or first-degree malice. I know what it was, and what I'm asking is, you agree today that the second-degree murder conviction stands? Your Honor, it does because this was not predicated on an underlying felony of kidnapping, so our argument goes to counts two and three. But it doesn't—does it—but do your statute of limitations arguments and due process arguments, do they implicate the murder conviction? The second-degree murder conviction? Yeah. Well, we explicitly waived the statute of limitations in order to get an instruction on second-degree murder because it was our belief that if the jury was presented with an all-or-nothing choice on count one, which charged premeditated murder, that might have been seen as a bridge too far. So what we're arguing with respect to this particular sufficiency of the evidence argument is counts two and three, which are, in effect, felony murder counts in which kidnapping is the underlying offense. And while we're saying very simply, as we stated very directly in the trial court, is that pulling somebody out of a car, beating them, and killing them does not constitute— Mr. Autry, and I'm sorry to interrupt, but I just want to make sure I understand your answer to Judge Phillips' question. There are—as I understood it, you have three issues before us. One is the sufficiency of the evidence argument. Another argument relates to the statute of limitations, whether the capital crime statute of limitations applies or not. The other argument relates to pre-indictment delay and whether there was unlawful pre-indictment delay. Does count one have nothing to do with those other two claims? No, Your Honor. With respect to the second and third claim on the statute of limitations as to whether this was a capital offense— Yes. —and the third claim on pre-indictment delay, that goes to Edward. That's what I thought. Yes. Okay. And I'm sorry if I wasn't making that clear. So no matter what happens today, a life sentence stands. In other words, however we decide the kidnapping and the other issues that you've raised, Mr. Murphy still has a life sentence at the end of the day. Well, no, Your Honor, because if the court were to agree with our arguments as to either pronounce two or three that were raised on the appeal, the whole case goes out. Well, I'm talking about count one. The whole case goes out. Why? I thought you just conceded that you had waived the statute of limitations on count one. And obviously, second-degree murder doesn't require the elements that you're talking about now. Yes, Your Honor. The statute of limitations argument, we waived it, I guess you could say, in order to get the second-degree murder instruction. We argue, though, and maintain in the trial court based on our pre-trial motions that the entire case should go out because of five-year statute of limitations. Well, you're telling me you waived it, but you didn't waive it. And I read where you waived it, and it looks like a waiver to me. And I've read Musacchio, and that looks to say that you can waive it. And so I don't understand what's left. The jury convicted him of second-degree murder, and none of your defenses go to that. I understand what the court is saying. I would think that even if all that were true, the third argument on pre-indictment delay, which is different than a straight statute of limitations argument, would be sufficient to kick the second-degree murder conviction in the first count out. Now, we did argue that if the court were to vacate the convictions on counts two and three, based on our argument that there was no kidnapping in this case, that the court should add a minimum with respect to count one in the second-degree murder conviction, remand the case back for resentencing in the trial court because the court, in deciding that Mr. Murphy should be sentenced to life imprisonment for count one, could have been affected by the fact that Mr. Murphy was improperly sentenced to two last sentences on counts two and three. And, of course, they're all run concurrently. Your Honors, I've got about 40 seconds left. And if there are no other questions from the court, we'd like to reserve what little time we have remaining. Let me ask you a question here. As you cite a number of cases that rely on chat win versus United States, how do we calculate an appreciable period in the context of this case or any other case for that matter? I think this case is somewhat unique because Mr. Murphy was subjected to being on Oklahoma State death row, facing execution for two decades, when Oklahoma State, the Oklahoma did not have any jurisdiction. The state of Oklahoma had no jurisdiction at all to try him in the first instance. And I think that's highly prejudicial. But that's not – you're being asked – Oh, I'm sorry. A chat win deals with the appreciable period that distinguishes a separate kidnapping offense. Oh, I'm sorry. I'm misunderstood. And so, I mean, the question is, how do we know what's an appreciable period? Well, Judge McHugh understood, so we're okay. I'm sorry. I'm misunderstood, Your Honor, and I apologize. My hearing isn't all that good. An appreciable period certainly wouldn't be met in this instance if somebody was killed within minutes in a single, uninterrupted criminal transaction such as occurred here. So whatever – Well, the definition, the dictionary definition is capable of being perceived or measured. And so, you know, is that met here? Your Honor, appreciable would be any passage of time at all. So I guess you could say that literally it is an appreciable period of time. So it's not very helpful to us here. Yes. I would agree with that. So looking at the Berry factors, I mean, I think they're interesting factors, but I don't see any connection between those factors and the actual statute. Yes, ma'am. How do we deal with grafting on a bunch of factors that aren't in the statute here? Well, the answer to that, from my perspective, would be that if the statute is subject to really no temporal or place limitation, then the statute is overly broad and is not interpreted in the manner in which it should be interpreted because every time somebody is seized or confined to commit, for example, an assault and battery or as in the Berry and Howard cases, a robbery, any time somebody is momentarily seized and confined, according to the logic that the government wants the court to adopt. And that's just a bridge too far because you have a kidnapping case. Every time you had an assault and battery, if you grabbed hold of somebody. But not necessarily every time you had a murder. I mean, you could have walked up and shot him through the window. Yes. You walk up and shoot somebody or you shoot somebody from a distance. Nobody is seized and confined. But in any other kind of murder case, other than poisoning maybe, somebody is seized and confined. If you grab them and stab them, strangle them or anything of that nature. So it's got to be something that is separate and apart from the homicidal act or what leads up to the homicidal act itself. And you just don't have that here in the facts of this case. If the court could adopt the argument of the government, that would open up every case such as I've described to be charged if you have a maritime or territorial jurisdiction in the United States. Every case like I've described, you have a kidnapping charge to ride along with it. They cannot cite a single case in which a court has upheld a kidnapping conviction in the territorial or maritime jurisdiction of the United States with facts similar to this. And I think that's telling. Thank you. Thank you. Your Honor. Good morning. May it please the Court. Jerry Linden on behalf of the United States. Can you start with where Mr. Autry left off? Why is your argument not that every robbery is a kidnap? Your Honor, I think there has to be additional elements that can occur outside of the robbery. So, for example, to get a kidnapping, you have to have a couple of things. We have to have a seizure and we have to have a holding. And the seizure and the holding has to be for some purpose or benefit. Not necessarily every robbery is going to have the holding. I think the best view in terms of holding is going to be preventing someone from escaping or detaining somebody where they're at. I think that's the easiest way to look at the term. Well, every robbery victim doesn't feel free to leave, I wouldn't think. I think that's fair. But I think we're going to have to look for something specifically towards that holding. So, for example, if a robbery at gunpoint, the robber says, give me your wallet, the victim hands over the wallet and the robber leaves. I don't know that we really had any sort of holding that was there. This changed up just a little bit. And let's add a bank robbery type situation. The defendant walks into a bank at gunpoint, tells everyone, don't move, stay where you are, this is a robbery. I think we now have a seizure and a holding. And what's interesting is— So every bank robbery is a kidnapping? If you have a holding. Well, you just said that if they go in and they say, stay where you are and nobody make any funny moves, that's a holding. Yes, Your Honor, I think that it is. And I think that that would certainly implicate the kidnapping statute at that point in time. And this is what— What if it's just one teller? Walk up to one teller, say, I've got a gun in my pocket, hand it over. And the teller hands it over. How is that different from the robbery on the street example? If there is the added element of holding, don't move, don't go anywhere, well, I'm the one to use the— Well, we have case law that says it can be implicit, right? It certainly can, Yes, Your Honor. So when you've got the person on the street and you hold the gun on them and you say, give me your wallet, isn't it implicit? I'm holding you, don't move? I think that it— Yes, Your Honor, there is an implicit don't move or else something bad is going to happen to you. I think there is an implicit don't leave or something bad is going to happen to you. But when we're analyzing kidnapping, it's okay if it's occurring at the same time as robbery. The D.C. Court of Appeals in a case called Rupin v. United States has said exactly that. And in that case, in the context of a sexual assault and a robbery at knifepoint, the D.C. Court of Appeals found that there was a seizure in holding for some purpose or benefit. So I'm confused where you're leaving us. It sounds like you start off by saying that we're going to have a narrow definition, so all robberies and assaults aren't included as kidnapping. But what you just said there sounds like everyone is going to come. If there is a detention— Well, there always is in a robbery, right? You have to get your wallet out, you have to get the cash, you have to whatever else. A certain amount of time passes. I agree with you. I think for the purposes of kidnapping, we're going to have to find some sort of detention that occurred in the context of a robbery. So whenever we're looking at multiple crimes occurring at the same time, if there is a detention going on, I think we are going into the kidnapping realm. And that is, I think, certainly with the legislature. Into—that is so fuzzy. Into the kidnapping realm. That means you can charge kidnapping. Yes, Your Honor. Okay, so back to the very start, sounds like all these crimes were also kidnaps. I think that a large number of them frankly could be, Your Honor. And that's certainly what the D.C. Court of Appeals has held. And there hasn't been any problems in that arena. Well, you seem hard—I'm sorry. You seem hard-pressed beyond roof in defining cases to support that proposition. And I think that's for a reason. I mean, most of—you don't cite Chatwin in your brief, notably. And what would Chatwin say about this? It is the case that speaks about the appreciable period. And it also speaks about the danger of interpreting the federal kidnapping statute such that it goes out into infinity in terms of its zone of liability. And I'll stop in a second. What I hear you communicating to Judge Phillips is infinity. That essentially there is no boundary on federal kidnapping. And that whenever you are involved in some other act that detains somebody, you have a kidnapping. Your Honor, I think Chatwin is really a case about the consent of the victim. I think Chatwin is best read through that prism. In Chatwin, my understanding of the case is from the 1940s where a 14-year-old girl voluntarily leaves her probation officer to go and rejoin the defendant in that case, and they cross state lines. You don't think Chatwin is relevant to this case? Your Honor, I think Chatwin—the heart of Chatwin deals with consent of the victim. I don't think that that is of relevance here. Well, it's true what you say. That's true. But it also spoke. It went out of its way to talk about infinity. The very things that the Chief Judge has mentioned. And so you just can't ignore those and say, well, this is a case about consent. Disregard the Supreme Court's dicta. Your Honor, I—the kidnapping statute exists in a certain balance that makes those fears not necessarily applicable in the real world. And what I mean by that is the legislature has chosen to punish the kidnapping statute with interim years up to life. And so in a post-Booker environment where the guidelines are no longer mandatory, the district court has the ultimate authority to look at this and balance all three of the stakeholders— the legislature, the judiciary, and the executive branch. The district court has the ability to balance all of those stakeholders. So, for example, if we have a robbery situation that's charged count one, robbery, count two, kidnapping, if the district court is convinced that some sort of unfair sentence would occur now that the guidelines are discretionary, we don't have those reasons. Because the district court can bury it downward, or it can, perhaps on some sort of departure, or simply just pay no attention at all to that kidnapping case and sentence the defendant to one day on that and go forward on the robbery case. These concerns, even in the Berry case, which is a case from the late 70s, 1978, if I recall, are all pre-Booker cases. I don't think—this argument seems to suggest that we're okay and don't worry about it because the district court can balance the interest and the district court can exercise its discretion. You're not saying that the district court should have boundless discretion in deciding how to sentence somebody, should it? Well, I think the district court has statutory means it has to look at. And the word is statute. Why aren't we engaged in an exercise of statutory interpretation as to what Congress would have considered to be the appropriate reach of the federal kidnapping statute? Well, let's look at the statute itself. The statute starts off by criminalizing about seven different things. And it is clear when I read the statute, to me at least, that Congress is trying to get at a broad range of misconduct. Congress is really trying to prevent all seizures of individuals. That's the first thing Congress has decided to do. And then doesn't Chatwin talk about what should be the bounds in our understanding of what Congress was intended to do? And we are bound by the dicta of the Supreme Court, are we not? The dicta, not necessarily, Your Honor. I think our case law says as much. Your Honor, I will go for it then. So, yes, that being the case. But we can still look at this together. We can still look at what's going on in the statute. Congress is clearly trying to criminalize a broad range of misconduct. In return for that broad range of misconduct that's been criminalized, there is the ultimate discretion. This all balances out when it's applied naturally through our system. What happens if we disagree with you and we say this, all robberies count, isn't the right way to read the statute? Do you lose or do you have a fallback position, a different argument that we might consider? Well, let's say, Your Honor, that the court were to adopt a barrier test. I think that's what the main issue is here, is whether the barrier test should be adopted in its own circuit. I don't see that as a losing proposition when applying the specific facts of Mr. Murphy in this case, the defendant. The duration in this case, I'll be frank with the court, is not easy to tell the duration of the petition in this case. I think the fairest way to read that is looking at about 10 to 15 minutes of time when you look at the record. Mr. Sumpter, does that make sense? For the entire crime? Your Honor, I think it's fair, yes. Yeah, so for the assault and the mutilation, all of that's in there. Yes, Your Honor, I think so. Now, additionally, in applying the barrier test, we have to first determine what's in the driver's seat. Is this a homicide or is this a kidnapping where I'm trying to get some sort of benefit through my seizure and detention? And I think the best way to look at this is I'm trying to get some sort of benefit through my seizure and detention. This isn't some ordinary murder. They got carried away. The benefit that the defendant was trying to derive through his seizure and detention was to sexually mutilate the ex-boyfriend of his current girlfriend. That was the benefit. That was the purpose. That's what was going on inside of the military. He had – he absolutely had to seize and detain the defendant for some appreciable amount of time in order to derive his benefit. Well, you're saying that – okay, let me see if I understand you. You're saying that in terms of what should be viewed as the focal point of our attention, it is either the – is it the murder or the kidnapping in this scenario? In this scenario, I think it is the kidnapping. It is clear that that wasn't the defendant's decision that night. He absolutely had to kidnap the victim in order to derive his benefit. And think about it in the context of – This is just your robbery argument all over again. Well, Your Honor, let's switch back to the statute a little bit. Let me ask you this, and it might help me, which is according to the government, when is the first moment that a kidnapping crime was completed? The kidnapping in this case would have been completed upon the seizure and detention. So when did those two things happen for the purpose of benefit? I view in this case that when the defendant is pulled out of the car and the assault begins, that's when the seizure and holding has occurred. And it's done so now for the benefit of sexually mutilating the victim. So I think at that point in time, when the beating is going on – because how else would you hold someone? Okay, so stopping the car wasn't enough by itself. Your Honor, I don't necessarily know that we got into the holding point of view. Now, importantly, to get to the holding point of view, the defendant and his co-defendants ran Mr. Sumka off, the driver of the vehicle. And the defendant specifically said, don't interfere. You stay out of it to that effect. So now we're getting into the holding because we're preventing the victim's escape. Parking your car in front of someone else, hypothetically, you could have backed up, gone around, changed directions, whatever. But when you've ran off his driver, told his driver not to interfere, contemporaneous to the beating that's going on, now you certainly have an intention to get a holding. What is your closest case to this one? And I understand that there are cases where there are murders involving kidnapping, like Judgey Bell's that's been referenced. But the crime was completed. The assault was completed. And then there's exportation. And those are easier cases than this one. You have one like this where someone just says, I want to kill that person. I'm going to stop their car, and I'm going to kill him. And the court says that's a kidnap. Are we out beyond where any other court has gone? Your Honor, believe me, I would have loved to have gone candidly. However, I think Rufin v. United States. I'm going to call you on Rufin. In Rufin, he comes up to her when she's at her door, holds a knife on her, and then he moves her into the common area before he assaults her. I mean, he actually transported her. It's a little different. Here, they drag him out of the car, and they immediately assault him, mutilate him, and throw him in a ditch to die. Your Honor, that's fair. However, in an Indian country jurisdiction kidnap, exportation is not required. All that's required within the statute itself is the seizure and detention for some type of subpoena. But when you have exportation, you have a break. You can separate, factually, the commission of a kidnapping from a commission of an assault and murder. I think we're at it. When they're moving them someplace else, it's part of the kidnapping. They're not, at that moment, assaulting them or murdering them. Your Honor, I think it's important to look at Congress here. Congress did not add exportation to the elements of an Indian country kidnap. All we have to do is a detention in order to get the Indian country kidnapped. Throwing in the element of exportation, I think, gets us— I'm not throwing in the element of exportation. I'm suggesting that it is a fact that makes it easier to distinguish between a kidnapping and a murder. Forgive me, Your Honor, I didn't mean to be computational. I think that an exportation would be further evidence of a holding, certainly, and would go towards the kidnapping. Of a holding for a purpose, exportation, that would be one. Another one would be bank robbery goes wrong, and the bank robber takes the bank president back into the back room and says, unless you get me out of here alive somehow, we're both going to die. In other words, it's not in a public place. It's not on a public street. Isn't that an important fact? This happened on a public roadway. Another car came by. That seems like a funny place to have holds for. Your Honor, I'm out of time. May I continue? Absolutely. Keep going. Your Honor, I don't think there's anything in the statute to show that there's some sort of public place requirement. However, if we're looking at can we seize and hold someone in a public place, I certainly think that you can. But let's just change the analysis just a little bit, and let's go to whatever we want to think of as a traditional case. If a defendant goes into a public park, seizes a child from that parent, and then communicates a ransom demand, even if it's just dormitories happening in a public place, we have a 1201 kidnapping. The analysis doesn't have to change when that becomes a seizure coupled by a holding for some other purpose or benefit. There's no reason to change the analysis. But in that scenario, if you also charged him with assault for roughly holding the child, you'd have a little problem with overlap, wouldn't you? I don't know that the assault goes away. Let's say that there was force used on one of the parents of the child. Let's say that there was a physical assault or a battery that occurred. That battery doesn't go away simply because there was a kidnapping going on. It's like an indictment. In that case, it would be kidnapping one, count one, count two, the assault. The assault doesn't just go away because of the kidnapping itself. And I think that's what happens in cases like this. What's the limiting proposition here? What are the limits of this? How is not every robbery a kidnapping? How is not every murder and assault a kidnapping? Every murder does not require a holding. Okay, every assault. I don't know that every assault requires a holding as well. There are certain times, for example, in a mutual combat type situation. There is not a holding that would occur in a mutual combat type situation. So every assault where you have your buddy hold the guy and then you punch him, that's a kidnapping? Yes, if the victim is trying to get away. What we have in that case is a seizure. We have a holding, and that seizure holding has been done for some purpose and benefit. There, if the victim is trying to get away and you're being held, prevented from your escape, that, I think, is when we transform from an assault into an assault plus a kidnapping. That's the moment in time where those two things become different objects. Can I indulge? Of course you can. I would like to know if this has any impact. Let's say we agree that there's no kidnapping here. You still have the second-degree murder, which has the same sentence. Does it make any difference whether the kidnapping conviction stays in? Your Honor, I think that the intended circumstances behind the murder to conviction being a kidnapping, I think are important to know. I can't guarantee to the court that if the kidnapping goes away, that it would be a life sentence. I don't know what the district court would do in that scenario. There would have to be a re-evaluation and re-application of guidelines in the case by county. But count one would stand? Yes, Your Honor. Yes, Your Honor. Yes, that would stand. Let me be clear. In your colloquy with Judge Phillips, in terms of whether you had a backup argument, you alluded to the Berry test and how applying the Berry test here would still result in the conviction standing. Well, you didn't apply Berry in your brief, did you? You rejected Berry. You said Berry doesn't apply. I mean, you didn't apply the four factors of Berry, did you? You're correct. Okay. All right. Sure, of course. One quick question on Section 1111, the murder, and that is the way that this reads, count two, is that murder committed in the perpetration of or attempt to perpetrate any kidnapping. But that's not what happened here, is it? It's not a murder in the perpetration of a kidnap. It's a kidnap, maybe, in the perpetration of a murder. Does that matter? No, Your Honor. I don't think that it matters. Are they different? I think they're one and the same thing. You think those two things say the same thing? Absolutely, Your Honor. If there's a kidnapping and a murder, regardless of what order they occur in, I think that we have a felony murder conviction that goes above and beyond that. By that language that's used in the statute? Yes, Your Honor, absolutely. All right. I'm out of time, Your Honor. I'm happy to go on. Yes, answer the question. Thank you, Your Honor. Your Honor, if there is a kidnapping and that kidnapping results in some sort of death, then now we have activated a felony murder. And so whether it was an incidental thing, so, for example, a kidnapping for ransom, that got out of hand. Well, let me just, I don't mean to take too much time, but I want to make sure that you're addressing what I'm concerned about, which is up comes the defendant, cuts off the car, and does he say to his compatriots, hey, let's go kidnap him and murder him? No. He says, let's go murder him. And so this kidnapping is incidental, at the very least. And the statute requires the murder be in perpetration of a kidnapping. Don't the people who are committing the crime have to know that they might be wanting to kidnap him? Well, it's easy to see an example where that would apply. I'm going to kidnap someone and they have a bodyguard, and the bodyguard intercedes and I shoot and kill the bodyguard. Then I have a murder in perpetration of a kidnapping. But that doesn't sound like what happened here. In this case, I think we had to have the kidnapping in order to commit the benefit of the kidnapping itself. So the murder did occur as a result of the kidnapping here. The sexual mutilation was the object of the kidnapping, and the sexual mutilation, according to the medical examiner, is what led to the death. The knife runs on the victim. So in this case, we certainly have a kidnapping first and a homicide and murder that occurred at the time. Thank you, counsel. Thank you. If you would put up for Mr. Autry five minutes. You don't have to take it, Mr. Autry, but you have it. Thank you. Just to be briefly, Your Honor, I think the court has gotten to the impression of this, that every time somebody is restrained or held and an assault is committed or some other crime is committed, the bank robbery example is used, other robbery examples used, that would mean automatically there is a kidnapping. I think Congress never, ever intended that to happen. That's why you have hardly any cases out there where jurisdiction is based on the territorial jurisdiction of the United States, the maritime jurisdiction of the United States, where somebody is charged with both, for example, a murder and a kidnapping, and a fact similar to this. And I would agree with Judge McHugh that this District of Columbia case differs because the victim in that case was moved an appreciable place away from where she was originally seized, and the assault continued. Here it was all one uninterrupted motion of pulling Mr. Jacobs out of the car, assaulting him, mutilating him, and killing him. That's not kidnapping. It can't be kidnapping. Otherwise, the statute is stretched beyond all recognition. What if they would have thrown him in the back seat, and he would have continued to gurgle and take a half hour to die or whatever as they drove to the next party location or wherever they were headed? Would that be a kidnapping? Let me see if I understand Judge Dulles. If he's thrown in the back seat and they go some distance away? Everything happens the same except they throw him in the back seat rather than in the ditch. After mutilating him and throwing him back in the back seat? Sure. I don't think that would constitute kidnapping. Why not? He's still alive. He's being transported. Oh, does the car move him? Yes. Okay. To the next location? I think, yes. If somebody is moving somebody, like happened in the Gabaldon case with the victim's assault that rendered unconscious, and you drive a distance away from a secret location or a secluded location in order to commit a murder, that wouldn't be kidnapping. Those are not the facts here. I understand. Let me ask you about your pre-indictment delay argument. You seem to acknowledge that the delay here was based upon Oklahoma's incorrect assumption of jurisdiction and that there was no tactical advantage sought to be gained by the government in its charging of the defendant. So I'm just not sure how that argument works. I understand that, Your Honor. This is, like I said before, when I misunderstood the chaplain question. There's a unique circumstance here as far as prejudice is concerned, and that is that Mr. Murry had to endure two decades on death row with various execution dates and things of that nature when he shouldn't have ever been there to begin with. Well, be that as it may, the question is whether the fault lies with the government, right? The United States government for that delay. Your Honor, that would be perhaps too high a decline for us all to see that. I just think that the unique facts in this case cry out for some sort of remedy or some sort of resolution that would acknowledge that the state of Oklahoma improperly charged, tried, convicted, and put this thing on death row for two decades, and they had no jurisdiction to do that, no such matter of jurisdiction to do that in the first instance. And I think that price should be paid for that. I mean, your argument is that there should be inherent prejudice? Yes, your Honor. And we just rejected that in Garcia, didn't we? Yes, your Honor. So that's our argument. And unless there are any other questions, I don't have anything further to present. Thank you very much. Thank you, counsel. Thank you for your arguments this morning. The case is submitted, and the court will be in recess.